UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROBERT TUCKER and ADAM SANDERS,

Plaintiffs,

-against-

BOARD OF ELECTIONS IN THE CITY OF NEW YORK; JOSE MIGUEL ARAUJO, MIGUELINA CAMILA, GINO A. MARMORATO, MICHAEL MICHEL, SIMON SHAMOUN, TIFFANY TOWNSEND, and JOHN WM. ZACCONE, in their official capacities as Commissioners of the Board of Elections in the City of New York; NEW YORK STATE ASSEMBLY MEMBER DAN QUART, in his individual capacity;

Defendants.

No. 1:20-cv-03111 (VEC)

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

EMERY CELLI BRINCKERHOFF & ABADY LLP
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000

# TABLE OF CONTENTS

**PAGE NO.**


**PRELIMINARY STATEMENT** ....................................................................................1

**FACTUAL BACKGROUND** ....................................................................................3

*Cameron Koffman is a Lifelong New York Resident Running for State Assembly* ....................3

*Plaintiffs Intend to Vote for Koffman in the Democratic Primary*..........................................5

*Quart's Attempts to Block Koffman from the Ballot* ..........................................................6

*Ballots for the Democratic Primary Are Being Printed Imminently* .......................................7

**LEGAL STANDARD** ..............................................................................................7

**ARGUMENT** ........................................................................................................7

I. PLAINTIFFS HAVE ESTABLISHED A CLEAR LIKELIHOOD OF SUCCESS ON THE MERITS ..........................................................................................7

A. The Residency Requirement, As Applied to Koffman, Deprives Plaintiffs of Their First and Fourteenth Amendment Rights to Cast Their Votes Effectively and to Political Association..............................................8

B. Applying the Residency Requirement to Koffman Violates Plaintiffs' Fourteenth Amendment Equal Protection Rights ...............................................10

C. New York's Five-Year Residency Requirement, as Applied to Koffman, Fails to Withstand Any Scrutiny Under *Burdick*..................................12

II. ABSENT AN INJUNCTION, PLAINTIFFS WILL SUFFER IRREPARABLE HARM..........................................................................................18

III. GRANTING PLAINTIFFS AN INJUNCTION IS IN THE PUBLIC INTEREST ....19

**CONCLUSION** .....................................................................................................20

# TABLE OF AUTHORITIES

**PAGE NO.**

**CASES**

*Anderson v. Celebrezze*,
460 U.S. 780 (1983) .......... 8, 9, 10, 18

*Baker v. Carr*,
369 U.S. 186 (1962) .......... 13

*Basank v. Decker*,
20 Civ. 2518, 2020 WL 1481503 (S.D.N.Y. Mar. 26, 2020) .......... 21

*Bay Cty. Democratic Party v. Land*,
347 F. Supp. 2d 404 (E.D. Mich. 2004) .......... 23

*Burdick v. Takushi*,
504 U.S. 428 (1992) .......... passim

*Bush v. Gore*,
531 U.S. 98 (2000) .......... 23

*California Democratic Party v. Jones*,
530 U.S. 567 (2000) .......... 10

*Christian Legal Soc'y v. Walker*,
453 F.3d 853 (7th Cir. 2006) .......... 22

*City of Cleburne v. Cleburne Living Ctr., Inc.*,
473 U.S. 432 (1985) .......... 12

*Crawford v. Marion Cty. Election Bd.*,
553 U.S. 181 (2008) .......... 11, 23

*Credico v. N.Y. State Bd. of Elections*,
10 Civ. 4555, 2013 WL 3990784 (E.D.N.Y. Aug. 5, 2013) .......... passim

*Democratic Nat'l Comm. v. Bostelmann*,
20 Civ. 249, 2020 WL 1320819 (W.D. Wis. Mar. 20, 2020) .......... 22

*Elrod v. Burns*,
427 U.S. 347 (1976) .......... 21

*Geller v. Lasher*,
196 A.D.2d 613 (2d Dep't 1993) .......... 20

*Haakenson v. Parkhouse*,
312 F. Supp. 929 (E.D. Pa. 1970) .......... 13

*Illinois State Bd. of Elections v. Socialist Workers Party*,
440 U.S. 173 (1979) .......... 9

*Indiana Democratic Party v. Rokita*,
458 F. Supp. 2d 775 (S.D. Ind. 2006) .......... 13

*Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Norton*,
422 F.3d 490 (7th Cir. 2005) .......... 13

*League of Women Voters of N.C. v. North Carolina*,
769 F.3d 244 (4th Cir. 2014) .................... 22

*Lerman v. Bd. of Election in the City of N.Y.*,
232 F.3d 135(2d Cir. 2000).................... 10, 15

*Lubin v. Panish*,
415 U.S. 709 (1974).................... 8

*Maas v. Gaebel*,
129 A.D.3d 178 (3d Dep't 2015) .................... 20

*Matter of Ferguson v. McNab*,
60 N.Y.2d 598 (1983) .................... 19

*Mays v. LaRose*,
952 F.3d 775 (6th Cir. 2020) .................... 12

*Melendres v. Arpaio*,
695 F.3d 990 (9th Cir. 2012) .................... 22

*N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc.*,
883 F.3d 32 (2d Cir. 2018).................... 7

*Ne. Fla. Chapter of the Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*,
508 U.S. 656 (1993).................... 14

*Obama for Am. v. Husted*,
697 F.3d 423 (6th Cir. 2012) .................... 22

*Plyler v. Doe*,
457 U.S. 202 (1982).................... 12

*Purcell v. Gonzalez*,
549 U.S. 1 (2006).................... 23

*Ramos v. Town of Vernon*,
353 F.3d 171 (2d Cir. 2003).................... 12

*Republican Party of N.C. v. Martin*,
980 F.2d 943 (4th Cir. 1992) .................... 9

*Reynolds v. Sims,*
377 U.S. 533 (1964).................... 1

*Sajous v. Decker*,
18 Civ. 2447, 2018 WL 2357266 (S.D.N.Y. May 23, 2018).................... 23

*Timmons v. Twin Cities Area New Party*,
520 U.S. 351 (1997).................... 11

*Turner Broadcasting Sys., Inc. v. F.C.C.*,
512 U.S. 622 (1994).................... 15

*U.S. Term Limits v. Thornton*,
514 U.S. 779 (1995).................... 21

*Williams v. Rhodes*,
393 U.S. 23 (1968) ........ 9, 12

*Williams v. Salerno*,
792 F.2d 323 (2d Cir. 1986) ........ 21

*Willkie v. Delaware Cty. Bd. of Elections*,
55 A.D.3d 1088 (3d Dep't 2008) ........ 20

*Yunus v. Robinson*,
17 Civ. 5839, 2019 WL 168544 (S.D.N.Y. Jan 11, 2019) ........ 23

**STATUTES**

N.Y. Election Law § 1-104(22) ........ 19, 20

**CONSTITUTIONAL PROVISIONS**

N.Y. Const. art. 3 § 7 ........ 1
U.S. Const. art. I, § 2, cl. 2 ........ 21

*"The right to vote freely for the candidate of one's choice is of the essence of a democratic society, and any restrictions on that right strike at the heart of representative government."*

*Reynolds v. Sims*, 377 U.S. 533, 555 (1964)

**PRELIMINARY STATEMENT**

Plaintiffs Robert Tucker and Adam Sanders seek a preliminary injunction ordering the New York City Board of Elections ("NYCBOE") to include their candidate of choice, Cameron Koffman, on the ballot for the Democratic primary election for New York State Assembly in the 73rd Assembly District (the "District") that is currently scheduled for June 23, 2020.

Plaintiffs want to vote for Koffman to represent them and others in the District. Koffman is a young recent college graduate who is challenging the incumbent, Dan Quart, in the upcoming Democratic primary. Plaintiffs see Koffman's youth as an asset. They want an Assembly Member who is not steeped in party politics, who is not beholden to lobbyists, and who will put the needs of the District first. Plaintiffs see Koffman as particularly well positioned to bring fresh representation to the District because he has lived in the District his whole life and is attuned to the issues that are important to its residents.

Koffman's recent college experience is now being used as a pretext to deny Plaintiffs the right to vote for him. Koffman's opponent, Dan Quart, claims that Koffman does not satisfy New York's residency requirement for Assembly candidates, which requires candidates to be "resident[s] of the state of New York for five years" preceding the election. *See* N.Y. Const. art. 3 § 7.

Koffman was born and raised on the Upper East Side of Manhattan—in the 73rd District, which he is now seeking to represent in the Assembly. He enrolled at Yale University in New Haven, Connecticut in the fall of 2015. He attended college for four years, graduating in

May 2019. When he arrived on campus as an 18-year-old freshman, he registered to vote in New Haven so he would be able to vote in person in the November 2015 election, the first election for which he was eligible to vote. When he registered, he listed his New York City address as his mailing address. He never renounced his New York State residency nor declared Connecticut his home state.

Plaintiffs are aware that Koffman attended college out of state and that he registered to vote in Connecticut so he could exercise his right to vote in person, but they do not see either fact as a drawback, let alone disqualifying. To the contrary, they are attracted to Koffman because of his original perspective as a recent college graduate and because of his commitment to civic engagement. They are concerned that applying New York's onerous residency requirement applicable to State legislative offices to Koffman unreasonably prevents them from voting for a young, qualified candidate who spent his whole life in the District but attended college 75 miles away.

The First and Fourteenth Amendments guarantee Plaintiffs the rights to cast their votes effectively and to politically associate with their qualified candidate of choice as well as with other Koffman supporters. The Equal Protection Clause similarly protects Plaintiffs from undue interference with their fundamental right to vote for a qualified candidate. Plaintiffs' constitutional rights will be abridged if they are precluded from voting for Koffman absent constitutionally sufficient justification. No adequate justification exists here to prevent Plaintiffs from voting for Koffman.

With the Democratic primary scheduled for June 23, 2020, and absentee ballots scheduled to be sent to voters within a matter of weeks, a preliminary injunction is necessary to ensure that Plaintiffs' constitutional rights are not violated. The Court should therefore order the

NYCBOE to place Koffman on the ballots that will soon be printed in preparation for the Democratic primary for New York State Assembly for the 73rd District.

## FACTUAL BACKGROUND

***Cameron Koffman is a Lifelong New York Resident Running for State Assembly***

Cameron Koffman is a Democratic candidate seeking to represent the 73rd District, which includes Manhattan's Upper East Side, in the New York State Assembly. At 22 years old, he would be the youngest member of the Assembly in history, overtaking Theodore Roosevelt, who was elected to the Assembly at the age of 23 in 1882. *See* Declaration of Nick Bourland in Support of Plaintiffs' Motion for a Preliminary Injunction ("Bourland Decl."), Ex. A at 2. He "casts his candidacy as representative of a new generation that can tackle the particular economic and political issues that face it." Bourland Decl., Ex. B.

Koffman was born and raised on the Upper East Side. Bourland Decl., Ex. A at 11; Ex. B at 1 (describing Koffman as an "Upper East Side native"). The only significant time he has spent outside of the Upper East Side was when he attended college at Yale University, from which he graduated in 2019. Bourland Decl., Ex. B at 1.

Koffman registered to vote in Connecticut on August 28, 2015 while he was a student at Yale. *See* Bourland Decl., Ex. C. The New Haven, Connecticut Registrar of Voters processed and accepted Koffman's voter registration form on September 28, 2015. *Id.* at 1. To register to vote in Connecticut, Koffman was required to provide only his name, date of birth, his temporary Connecticut address (which was his Yale dormitory), his mailing address (which was his home address on the Upper East Side in New York), his telephone number, his gender, his political affiliation (if any), and to affirm that he was a citizen of the United States. *Id.* at 2. He was not required to swear or attest that the State of Connecticut was his sole electoral residence or even his primary residence. *See id.* He voted in Connecticut in 2015, 2016, 2017, and 2018.

Bourland Decl., Ex. D. Since he graduated from Yale in May 2019, Koffman has been living full-time on the Upper East Side.

In October 2019, Koffman declared his candidacy for the 2020 Democratic Party nomination for the office of Member of the New York State Assembly for the 73rd District. He received the required number of signatures to be placed on the ballot and timely submitted the necessary paperwork. The adequacy of his petition to gain a place on the ballot is not in dispute. The Democratic primary is currently scheduled for June 23, 2020. Bourland Decl., Ex. E at 1–2. Koffman is the only candidate challenging incumbent Assemblymember Dan Quart for the Democratic nomination.

As a lifelong New Yorker and District 73 resident, Koffman has centered his campaign around his community and wants his neighbors in District 73 to know he "want[s] to do everything [he] can to make it better." Bourland Decl., Ex. A at 12. Koffman is in tune with the local issues that matter to his community, including the retail vacancy crisis plaguing his community in Manhattan, climate change, and gun control. *Id.* at 3, 6, 7. Of particular interest to 73rd District voters this election year, Koffman is running in "opposition to congestion pricing"—which will toll drivers to enter Manhattan below 60th Street in order to raise funds for the beleaguered subway system—and the expansion plans for Lenox Hill Hospital. Bourland Decl., Ex. B at 3; *see also* Ex. A at 6. Citing the criminal convictions of New York's former Assembly Speaker and Majority Leader for corruption-related offenses, Koffman has also spoken out against the State's culture of political corruption and made it a centerpiece of his campaign. Bourland Decl., Ex A. at 7. So far, hundreds of people have made contributions to, or volunteered for, Koffman's campaign. *Id.* at 8.

***Plaintiffs Intend to Vote for Koffman in the Democratic Primary***

Plaintiffs Robert Tucker and Adam Sanders are registered Democrats and residents of New York State Assembly District 73. *See* Declaration of Robert Tucker in Support Plaintiffs' of Motion for Preliminary Injunction ("Tucker Decl.") ¶ 1; Declaration of Adam Sanders in Support of Plaintiffs' Motion for Preliminary Injunction ("Sanders Decl.") ¶ 1. Plaintiffs are eligible to vote in the Democratic primary election currently scheduled for June 23, 2020 and intend to vote for Cameron Koffman as their State Assemblymember. Tucker Decl. ¶ 2; Sanders Decl. ¶ 2.

Mr. Tucker supports and intends to vote for Koffman because "his candidacy brings a fresh perspective to the primary race." Tucker Decl. ¶ 4. Mr. Tucker is 64 years and has two children who are in their twenties. *Id.* ¶¶ 5, 6. His children have convinced him that his generation has made a lot of political mistakes. *Id.* ¶ 6. Mr. Tucker is concerned that his generation, and older people in general, are overrepresented among lawmakers in Albany. *Id.* ¶ 6. Accordingly, he wants to vote for Koffman because he "believe[s] it is time for a younger generation of leaders to put their new ideas to work to try to fix the mistakes Mr. Tucker's generation made." *Id.* ¶ 7. Mr. Tucker also appreciates that Koffman grew up on Manhattan's Upper East Side and has lived in the community his whole life. *Id.* ¶ 8.

Mr. Tucker does not like that his incumbent Assemblymember, Quart, is simultaneously running for reelection to the Assembly and for Manhattan District Attorney. *Id.* ¶ 9. Mr. Tucker is concerned that if Koffman is disqualified from the ballot, Quart will be unopposed in the Democratic primary. *Id.* ¶ 10.

Mr. Sanders also intends to vote for Koffman in the June 23, 2020 Democratic primary election. Sanders Decl. ¶ 3. Mr. Sanders had the opportunity to meet Koffman once in March 2020 on the Upper East Side. *Id.* ¶ 5. Mr. Sanders was impressed by and appreciated

Koffman's independent thinking and desire to put the needs of his community before party politics. *Id.* ¶ 5. He sees Koffman's relative youth as an asset and looks forward to electing someone from Koffman's generation to represent District 73 in the State Assembly. *Id.* ¶ 6. Mr. Sanders is also drawn to the fact that Koffman is a lifelong Upper East Side resident. *Id.* ¶ 7. When Mr. Sanders spoke with Koffman back in March, he felt Koffman "truly understood the community and the issues that are important to District residents" like Mr. Sanders. *Id.* ¶ 7.

Mr. Sanders is not interested in voting for incumbent Assemblymember Quart. He does not appreciate that Quart is "mounting a campaign for Manhattan District Attorney at the same time he is seeking re-election in the Assembly." *Id.* ¶ 8. He is worried that if Koffman is not on the ballot on June 23, Quart will run unopposed in the Democratic primary. *Id.* ¶ 9.

***Quart's Attempts to Block Koffman from the Ballot***

On or around March 30, 2020, Quart filed a petition in New York State Supreme Court, New York County, seeking to prohibit the NYCBOE from placing Koffman on the ballot for the Democratic primary election for Assembly in the 73rd District. Quart contends that Koffman does not meet New York State's five-year residency requirement, *see* N.Y. Const. art. 3 § 7, because he attended college and voted in New Haven, Connecticut within the past five years. Quart's challenge is the sole challenge to Koffman's otherwise uncontested right to be on the ballot on June 23.

The NYCBOE is the respondent in Quart's state court proceeding, and Koffman is a party as well. Plaintiffs are not a party to the state court proceeding. On April 29, 2020, Quart filed a motion for summary judgment in the state court proceeding. His motion is scheduled to be heard on May 6, 2020.

***Ballots for the Democratic Primary Are Being Printed Imminently***

Due to the coronavirus crisis, New York's primary elections, including the Democratic primary for Assemblymember in the 73rd District, were postponed from April 28, 2020 to June 23, 2020. Bourland Decl., Ex. E at 1–2. Also as a result of the crisis, Governor Cuomo ordered that absentee ballots must be sent to every voter. Bourland Decl., Ex. F at 2. The ballots are scheduled to be mailed approximately 30-45 days in advance of the June 23, 2020 election. Plaintiffs' constitutional rights will be violated if Koffman is not on the ballots that are to be sent to voters in mid-May. Bourland Decl., Ex. G at 1.

**LEGAL STANDARD**

A party seeking a preliminary injunction must show "(1) irreparable harm; (2) either a likelihood of success on the merits of both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public interest."[1] *N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc.*, 883 F.3d 32, at 37 (2d Cir. 2018) (citation omitted). Because Plaintiffs seek a mandatory injunction, they must demonstrate a "clear or substantial likelihood of success on the merits." *Id.* (citation omitted).

**ARGUMENT**

**I. PLAINTIFFS HAVE ESTABLISHED A CLEAR LIKELIHOOD OF SUCCESS ON THE MERITS**

Plaintiffs have a substantial likelihood of establishing that applying New York's five-year residency requirement to Koffman violates their constitutional rights.

---

[1] An additional fourth factor—"whether the balance of equities tips in Plaintiffs' favor"—merges with the public interest factor here, where "the Government is the opposing party." *Batalla Vidal v. Nielsen*, 279 F. Supp. 3d 401, 435 (E.D.N.Y. 2018) (citing *Nken v. Holder*, 566 U.S. 418, 425 (2009)).

Laws that regulate elections and the electoral process necessarily "implicate rights that lie at the core of our Constitution, including the right to vote, to engage in free speech and association, and to enjoy equal protection of the laws." *Credico v. N.Y. State Bd. of Elections*, 10 Civ. 4555, 2013 WL 3990784, at *15 (E.D.N.Y. Aug. 5, 2013) (internal citation omitted). As the Supreme Court has recognized, "the rights of voters and the rights of candidates do not lend themselves to neat separation; laws that affect candidates always have at least some theoretical, correlative effect on voters." *Anderson v. Celebrezze*, 460 U.S. 780, 786 (1983) (citation omitted); *see also Lubin v. Panish*, 415 U.S. 709, 716 (1974) ("The right of . . . an individual to a place on the ballot is entitled to protection and is intertwined with the rights of voters."). Applying the five-year residency requirement to bar Plaintiffs from voting for Koffman in the Democratic primary violates Plaintiffs' clearly established rights under the First and Fourteenth Amendments, including their rights to cast their votes effectively, to political association, and to equal protection under the laws.

### A. The Residency Requirement, As Applied to Koffman, Deprives Plaintiffs of Their First and Fourteenth Amendment Rights to Cast Their Votes Effectively and to Political Association

New York's five-year residency requirement, as applied to Koffman, violates Plaintiffs' First and Fourteenth Amendment rights to cast their votes effectively and to politically associate with Koffman and other Koffman voters. The residency requirement "places burdens on two different, although overlapping, kinds of rights" secured by the First and Fourteenth Amendments, which "rank among our most precious freedoms." *Anderson*, 460 U.S. at 787 (quoting *Williams v. Rhodes*, 393 U.S. 23, 30–31 (1968)). First, Plaintiffs have a First Amendment right "to cast their votes effectively." *Anderson*, 460 U.S. at 787 (quoting *Williams*, 393 U.S. at 30). This right "prohibit[s] restrictions on the ballot access that impair the ability [of voters] to express their political preferences, or that limit the opportunity for citizens to unite in

support of the candidate of their choice." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 959–60 (4th Cir. 1992) (citing *Anderson*, 460 U.S. at 787–88; *Illinois State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 184 (1979)).

Second, Plaintiffs have a long-established right "to associate with candidates through the ballot process," which is necessarily a "corollary to the right to vote" secured by the First Amendment and the Due Process Clause of the Fourteenth Amendment. *Credico*, 2013 WL 3990784, at *15 (citations omitted); *see also Anderson*, 460 U.S. at 787 (citation omitted) (acknowledging "the right of individuals to associate for the advancement of political beliefs"). This right to political association, which is "at the core of the First Amendment," guarantees Plaintiffs and other voters the right to associate in support of their political candidate of choice. *Lerman v. Bd. of Election in the City of N.Y.*, 232 F.3d 135, 146–53 (2d Cir. 2000) (citation omitted) (holding that New York's ballot petition witness residence requirement was unconstitutional because it imposed a severe burden on candidate's supporters' political association rights and bore no relationship to the asserted state interests); *see also California Democratic Party v. Jones*, 530 U.S. 567, 574 (2000) ("Representative democracy in any populous unit of governance is unimaginable without the ability of citizens to band together in promoting among the electorate candidates who espouse their political views."). Practices that even "potentially threaten [the right to political association] are highly suspect." *Lerman*, 232 F.3d at 146–47 (internal quotations marks and citation omitted).

Plaintiffs' rights under both doctrines are derogated here, where their right to vote for Koffman is being threatened by an arbitrary and irrational application of New York State's five-year residency requirement.

Where a state rule burdens a voter's constitutional rights, a court must "weigh the 'character and magnitude' of the burden the State's rule imposes on those rights against the interests the State contends justify that burden, and consider the extent to which the State's concerns make the burden necessary." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997) (citing *Burdick v. Takushi*, 504 U.S. 428, 434 (1992)); *see also Credico*, 2013 WL 3990784, at *16. "The rigorousness of [the court's] inquiry into the propriety of a state election law depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights. *Burdick*, 504 U.S. at 434.

In weighing the "character and magnitude" of a plaintiff's injury against the "precise interests put forward by the State as justifications for the burden imposed by its rule," courts consider "the extent to which those interests make it necessary to burden the plaintiff's rights." *Id.* The standard is, in other words, "flexible," *id.*, and "varies with the effect of the regulation at issue," *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 210 (2008) (Souter, J., dissenting). Laws that impose "severe restrictions" must be "narrowly drawn to advance a state interest of compelling importance," *Burdick*, 504 U.S. at 434—a test some courts refer to as "strict scrutiny," *see, e.g.*, *Credico*, 2013 WL 3990784, at *18. On the other hand, "reasonable, nondiscriminatory restrictions upon the First and Fourteenth Amendment rights of voters" may be justified by a showing of "important regulatory" state interests. *Burdick*, 504 U.S. at 434 (citations and quotations omitted).

**B. Applying the Residency Requirement to Koffman Violates Plaintiffs' Fourteenth Amendment Equal Protection Rights**

Applying the five-year residency requirement to Koffman also impacts Plaintiffs' rights under the Equal Protection Clause.

The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). In determining whether a state law violates the Equal Protection Clause, courts "must consider the facts and circumstances behind the law, the interests which the State claims to be protecting, and the interests of those who are disadvantaged by the classification." *Williams v. Rhodes*, 393 U.S. 23, at 30 (1968). Normally, courts review equal protection claims using the well-known tiers of scrutiny and apply a heightened level of review—strict scrutiny—when a law "burdens a group's exercise of a fundamental right," as it does here. *Ramos v. Town of Vernon*, 353 F.3d 171, 175 (2d Cir. 2003) (citing *Plyler v. Doe*, 457 U.S. 202, 216–17 (1982)). However, "when a plaintiff alleges that a state had burdened *voting rights* through the disparate treatment of voters," courts apply the same *Anderson-Burdick* framework detailed above. *Mays v. LaRose*, 952 F.3d 775, 783 (6th Cir. 2020) (internal quotation marks and citation omitted) (emphasis added).

Here, the five-year residency requirement, as applied to exclude Koffman, impermissibly disadvantages a discrete class of voters: Koffman's voters, including Plaintiffs. *See, e.g.*, *Indiana Democratic Party v. Rokita*, 458 F. Supp. 2d 775, 813 (S.D. Ind. 2006) (citing *Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Norton*, 422 F.3d 490, 497 (7th Cir. 2005)) (holding plaintiffs had standing to bring an equal protection challenge to a voter ID law "on the grounds that they have been disadvantaged relative to certain classes of voters who possess [photo ID]"); *Haakenson v. Parkhouse*, 312 F. Supp. 929, 932 (E.D. Pa. 1970) (citing *Baker v. Carr*, 369 U.S. 186 (1962)) (noting that the Supreme Court has made clear that "'dilution' of voting power of members of one class of qualified voters violates the Equal Protection Clause"). All other voters who intend to cast their ballots in the primary for the only

other candidate, the incumbent, Quart, remain unscathed. Applying the five-year residency requirement to Koffman subjects Plaintiffs to disparate treatment by erecting a barrier that makes it impossible for one group—Koffman's voters, including Plaintiffs—to exercise their fundamental rights.[2]

### C. New York's Five-Year Residency Requirement, as Applied to Koffman, Fails to Withstand Any Scrutiny Under *Burdick*

Applying New York's five-year residency requirement to disqualify Koffman from the Democratic Primary places an undue burden on Plaintiffs' First and Fourteenth Amendment rights to effectively cast their vote, political association, and equal protection under the laws. Koffman is Plaintiffs' candidate of choice. If he is not permitted to participate in the Democratic primary, Koffman's voters—and no other group—will be completely deprived of their rights to politically associate with Koffman by casting their votes for him in the fast-approaching June 23, 2020 election. Absent intervention from this Court, Plaintiffs will have only one candidate to choose from on the ballot—the incumbent, Quart—and will therefore be rendered voiceless in the Democratic primary. Strict scrutiny should therefore be applied, and Defendants should be required to establish that applying the five-year residency requirement to Koffman "narrowly" advances "a state interest of compelling importance." *Burdick*, 504 U.S. at 434. In any event, Defendants cannot establish that applying the five-year residency requirement to bar Koffman from the Democratic primary advances any state interest in the specific context of this case.

---

[2] For avoidance of doubt, Plaintiffs' equal protection rights have been violated even though they may still be able to exercise their overall fundamental right to vote by voting in the election without Koffman on the ballot. *See Ne. Fla. Chapter of the Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 666 (1993) (citation omitted) ("The 'injury in fact' in an equal protection case . . . is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit.").

The justification for New York's five-year residency requirement was articulated by its framers when it was introduced, debated, and adopted at the New York State Constitutional Convention of 1938. *See* Bourland Decl., Ex. H at 2387. According to William J. Kuczwalski, the Delegate who introduced the amendment at the convention, the five-year residency requirement was necessary to ensure that "anyone who is elected to the Legislature . . . should be well grounded and well qualified and understand the conditions of this State before he is elected to that office." *Id.* at 2388. Speaking in favor of the amendment, Delegate Irwin Steingut added that the residency requirement would guarantee that Assembly candidates-elect will "be responsive to the people of that community" and "have some idea of what type of persons live in that community and what the people of that community desire and what their problems are." *Id.* at 2389. In short, the "precise interest[] put forward by the State as justifications for the burden imposed by its rule," *Burdick*, 504 U.S. at 434, is to ensure candidates are familiar with the needs of their constituents.

"[T]he fact that the defendant's asserted interests are 'important in the abstract' does not necessarily mean that its chosen means of regulation 'will in fact advance those interests.'" *Lerman*, 232 F.3d at 149 (quoting *Turner Broadcasting Sys., Inc. v. F.C.C.*, 512 U.S. 622, 644 (1994)). At the very least, Defendants must establish that applying the five-year residency requirement to exclude Koffman is "a reasonable means of achieving the State's proffered goals"—the lowest level of scrutiny under the *Burdick* flexible standard of constitutional review. *Credico*, 2013 WL 3990784, at *21 (citation omitted). They cannot meet even this less stringent standard for five reasons.[3]

[3] Though Plaintiffs analyze the five-year residency requirement under this less stringent standard, as set forth above, Plaintiffs maintain that the highest level of *Burdick* scrutiny is warranted here, and that the NYCBOE Defendants cannot meet that strict scrutiny standard for all the reasons set forth herein.

*First*, Koffman has a particularly well-developed understanding of the conditions on the ground in New York generally, and in the 73rd Assembly District in particular. Koffman was born and raised on the Upper East Side of Manhattan. Bourland Decl., Ex. A at 11; Ex. B at 1. He currently lives in the same New York neighborhood today. Bourland Decl., Ex. B at 1. The only time Koffman has lived outside the Upper East Side was when he attended Yale University as an undergraduate. *Id.* Following his graduation from Yale in 2019, Koffman moved back to his home in New York. *Id.* As a lifelong New Yorker, Koffman is in touch with his New York community and is keenly aware of the issues of concern to New Yorkers in District 73, including the retail vacancy crisis plaguing Manhattan, the expansion of the Lenox Hill Hospital, climate change, gun control, and the proposed congestion pricing scheme. Bourland Decl., Ex. A at 3, 6, 7; Ex. B at 2–3. Taken together, these facts lead to only one conclusion: Koffman has deep ties to his New York community and is in tune with the needs of the people of New York and the Upper East Side—indeed, he *is* one such person.

Disqualifying Koffman from the ballot actually *frustrates* the State's interests underlying the five-year residency requirement. Between his youth—at 22-years old, Koffman would be the youngest person to ever be elected to the State Assembly—and his lifelong ties to his Upper East Side community, Koffman knows the State of New York well and the issues affecting young New Yorkers in particular, a perspective Plaintiffs cite as a reason for their support of his candidacy. Tucker Decl. ¶ 8; Sanders Decl. ¶ 7. This Court must consider "the extent to which [the NYCBOE Defendants'] interests make it necessary to burden [Plaintiffs'] rights." *Burdick,* 504 U.S. at 434. Excluding a qualified candidate who is in touch with his community's needs from the ballot "does nothing to advance the State's interest . . . and in fact, under these circumstances, runs counter to this goal." *Credico*, 2013 WL 3990784, at *23.

*Credico* is instructive. There, the court declared unconstitutional a section of the New York Election Law, as applied to the plaintiff-political party, because the law discriminated against and burdened independent political bodies' access to the ballot. *See generally Credico*, 2013 WL 3990784. The court considered the state's asserted goal of "preventing voter confusion" and concluded that, due to the specific mechanics of how the Election Law provision was applied in practice, the law made it significantly *more likely* that voters would be confused. *Id.* at *22–23 (emphasis added). Because the law thwarted the state's interest in preventing voter confusion, the court found that the defendants' violation of plaintiffs' rights was not justified and clearly failed the *Burdick* balancing test. *Id.* at *23.

Here, as in *Credico*, preventing Plaintiffs from voting for Koffman, a lifelong New Yorker who understands his community's needs, frustrates—rather than advances—the state's interest in ensuring candidates for the New York State Assembly are in touch with their communities and constituents. A woodenly applied five-year "residence" requirement simply does not address any constitutionally based state interest.

*Second*, the five-year residency requirement, as applied to Koffman, is unconstitutional because the NYCBOE Defendants can further their interests by less burdensome means. "Precision of regulation must be the touchstone in an area so closely touching our most precious freedoms." *Anderson*, 460 U.S. at 806 (internal quotation marks and citation omitted). Accordingly, "[i]f the State has open to it a less drastic way of satisfying its legitimate interests, it may not choose a legislative scheme that broadly stifles the exercise of fundamental personal liberties." *Id.* (internal quotation marks and citation omitted). Excluding Koffman's candidacy is hardly the least burdensome way to ensure all candidates understand the issues *du jour* on the ground in New York. To the contrary, because of Koffman's intimate knowledge of the District,

the best way to ensure that District constituents, like Plaintiffs, are represented by someone who knows their needs is to *allow* Koffman to run, not to disqualify him.

*Third*, it is undisputed that Koffman has been a "resident" of the Upper East Side since May 2019 and therefore satisfies New York's in-district residency requirement. Under Article 3, Section 7 of the New York Constitution, in addition to the five-year in-state residency requirement, a State Assembly candidate must be a resident of the Assembly district he or she seeks to represent for the "twelve months immediately preceding his or her election." The interplay of this district residency requirement and the five-year State residency requirement, as applied to Koffman, yields a ridiculous result and, perversely, opens the door to political carpetbagging. If we take Defendants' interpretation of the district and State residency requirements to its logical conclusion, a hypothetical candidate who grew up in California until the age of 18, attended college for four years in Buffalo, New York, and then moved almost 400 miles to the Upper East Side on June 22, 2019, would be eligible to run for Assembly in the District this year, even if he possessed little to no knowledge of the District's specific needs. Meanwhile, Koffman, who was born and raised on the Upper East Side and has always called it his home, would be barred from running for Assembly in the District because he attended college in Connecticut, a commuter rail ride away from the Upper East Side. This absurd outcome is further proof that the five-year requirement, as applied to Koffman, does not further the State's interests.

*Fourth*, the fact that Koffman registered to vote or voted in Connecticut in the past five years has no bearing on whether he is familiar with the needs of Plaintiffs and his other would-be constituents in New York. To register to vote in Connecticut, Koffman was required to provide only basic biographical information, his temporary Connecticut address at his Yale

dormitory, his mailing address (which was his home on the Upper East Side), his telephone number, his gender, his political affiliation (if any), and to affirm he was a United States citizen. Bourland Decl., Ex. C. He was not required to swear or attest that Connecticut was his sole electoral residence or even his primary residence. *See id.* And no evidence suggests that he was required to sever his ties with the State of New York or otherwise cease keeping abreast of the needs of his community back in New York in order to vote in Connecticut.

*Fifth*, the State cannot reasonably assert an interest in connecting voting residence with actual physical residence because the State's Election Law recognizes and accommodates the fact that candidates and voters often have multiple voting residences. Candidates with multiple residences are permitted to "choose one to which she has legitimate, significant and continuing attachments as her residence for purposes of [the New York] Election Law." *Matter of Ferguson v. McNab*, 60 N.Y.2d 598, 600 (1983) (citing N.Y. Election Law § 1-104(22). The State Election Law specifically accommodates voters and candidates with homes in different jurisdictions by expressly defining the term "resident" as "that place where a person maintains a fixed, permanent and principal home and to which he, *wherever temporarily located*, always intends to return." N.Y. Election Law § 1-104(22) (emphasis added).

New York appellate courts have broadly interpreted this definition and embraced New York's flexible approach to residency for electoral purposes. *See Maas v. Gaebel*, 129 A.D.3d 178, 181 (3d Dep't 2015) (voters were residents of an Upstate town for electoral purposes because they owned seasonal apartments in the town for at least a decade, even though the apartment complex was only open and habitable from May to October); *Willkie v. Delaware Cty. Bd. of Elections*, 55 A.D.3d 1088, 1090 (3d Dep't 2008) (voters were residents of an Upstate town for voting purposes, even though they lived and worked in New York City during the week,

because "they spen[t] most weekends and vacations in [the Upstate town]"); *Geller v. Lasher*, 196 A.D.2d 613, 614 (2d Dep't 1993) (New York City Council primary election candidate was a resident of the applicable electoral district in the Bronx because he "intermittently lived" at a home in the district for over ten years). Whatever interest the State has in classifying Koffman as an "outsider," excluding him form the ballot, and, in turn, violating Plaintiffs' constitutional rights, is undercut by the State's permissive rules allowing candidates with intermittent or seasonal residence in New York electoral districts to run for elected office.[4]

Applying the five-year residency requirement to disqualify Koffman from the ballot, and thereby barring Plaintiffs from politically associating with and effectively casting their vote for their preferred candidate, is not a reasonable means of advancing any State interest. The five-year residency requirement therefore fails to pass even the lowest level of scrutiny under *Burdick*'s flexible test and is unconstitutional as applied to Koffman. Plaintiffs have a strong likelihood of success on the merits of their First and Fourteenth Amendment claims.

## II. ABSENT AN INJUNCTION, PLAINTIFFS WILL SUFFER IRREPARABLE HARM

"In the Second Circuit, it is well-settled that an alleged constitutional violation constitutes irreparable harm." *Basank v. Decker*, 20 Civ. 2518, 2020 WL 1481503, at *4 (S.D.N.Y. Mar. 26, 2020) (collecting cases); *see also Elrod v. Burns*, 427 U.S. 347, 373 (1976) (where plaintiff had proven a probability of success on the merits, the threatened loss of First Amendment freedoms "unquestionably constitutes irreparable injury"). This presumption is particularly strong where a person's constitutional right to vote is being infringed. *See Williams*

[4] The State's interest is further undercut by the rules governing eligibility for federal elected offices. Candidates running to represent New Yorkers in the United State House of Representatives and Senate are required to be only an "inhabitant" of the State of New York "when elected." U.S. Const. art. I, § 2, cl. 2; *see also U.S. Term Limits v. Thornton*, 514 U.S. 779, 837–38 (1995) (holding that states cannot impose qualifications for prospective members of the U.S. Congress stricter than those specified in the Constitution).

*v. Salerno*, 792 F.2d 323, 326 (2d Cir. 1986) (holding that plaintiffs "would certainly suffer irreparable harm if their right to vote were impinged upon"); *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012) ("A restriction on the fundamental right to vote . . . constitutes irreparable injury."). Additionally, "traditional legal remedies would be inadequate, since infringement on a citizen's constitutional right to vote cannot be redressed by money damages." *Democratic Nat'l Comm. v. Bostelmann*, 20 Civ. 249, 2020 WL 1320819, at *8 (W.D. Wis. Mar. 20, 2020) (citing *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006)). Accordingly, an injunction is warranted here, where "once the election occurs, there can be no do-over and no redress." *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 244, 247 (4th Cir. 2014).

## III. GRANTING PLAINTIFFS AN INJUNCTION IS IN THE PUBLIC INTEREST

The public interest is best served by granting Plaintiffs' motion for a preliminary injunction. First, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (citation omitted); *see also Sajous v. Decker*, 18 Civ. 2447, 2018 WL 2357266, at *13 (S.D.N.Y. May 23, 2018) ("The public interest is best served by ensuring the constitutional rights of persons within the United States are upheld."); *Yunus v. Robinson*, 17 Civ. 5839, 2019 WL 168544, at *24 (S.D.N.Y. Jan 11, 2019) (granting a preliminary injunction because it served the public interest, where it would, among other things, ensure compliance with the Constitution). The public has a particularly "strong interest in exercising the fundamental political right to vote," *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) (citation and internal quotation marks omitted), and that interest is best served by enjoining state actors like the NYCBOE Defendants from violating Plaintiffs' voting rights.

The public interest is further served by preserving public confidence in the integrity of the electoral process itself. *See Crawford,* 553 U.S. at 197 (plurality) (noting that "public confidence in the integrity of the electoral process has independent significance, because it encourages citizen participation in the democratic process"); *Bay Cty. Democratic Party v. Land*, 347 F. Supp. 2d 404, 438 (E.D. Mich. 2004) (citing *Bush v. Gore*, 531 U.S. 98, 109 (2000)) ("The public interest is served when citizens can look with confidence at an election process that insures that all votes cast by qualified voters are counted."). Public knowledge that registered voters are unable to cast their votes for the qualified Democratic primary candidate of their choosing—due to an arbitrary application of the five-year residency requirement—would be harmful to the public's perception of the election's legitimacy. Plaintiffs' requested injunctive relief is squarely in the public interest.

**CONCLUSION**

For the foregoing reasons, Plaintiffs are entitled to a preliminary injunction ordering the NYCBOE to include Koffman on the ballot for the Democratic primary election for New York State Assembly in the 73rd Assembly District, currently scheduled for June 23, 2020.

Dated: May 4, 2020
New York, New York

EMERY CELLI BRINCKERHOFF
& ABADY LLP

/s/

Richard D. Emery
Samuel Shapiro
Nick Bourland

600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000
remery@ecbalaw.com
sshapiro@ecbalaw.com
nbourland@ecbalaw.com
*Attorneys for Plaintiffs*