EMERY CELLI BRINCKERHOFF & ABADY LLP

RICHARD D. EMERY
ANDREW G. CELLI, JR.
MATTHEW D. BRINCKERHOFF
JONATHAN S. ABADY
EARL S. WARD
ILANN M. MAAZEL
HAL R. LIEBERMAN
DANIEL J. KORNSTEIN
O. ANDREW F. WILSON
ELIZABETH S. SAYLOR
KATHERINE ROSENFELD
DEBRA L. GREENBERGER
ZOE SALZMAN
SAM SHAPIRO

ATTORNEYS AT LAW
600 FIFTH AVENUE AT ROCKEFELLER CENTER
10TH FLOOR
NEW YORK, NEW YORK 10020

TEL: (212) 763-5000
FAX: (212) 763-5001
www.ecbalaw.com

DIANE L. HOUK

EMMA L. FREEMAN
DAVID BERMAN
HARVEY PRAGER
SCOUT KATOVICH
NICK BOURLAND
ANDREW K. JONDAHL
ANANDA BURRA
MAX SELVER

May 10, 2020

***By ECF***

Hon. Valerie E. Caproni
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

*Re: Tucker v. Bd. of Elections in the City of New York*, No. 20-cv-03111 (VEC)

Dear Judge Caproni:

On behalf of Plaintiffs in the above-referenced action, we write to briefly respond to the New York City Board of Elections ("NYCBOE") Defendants' letter May 9, 2020 letter (Dkt. 42).

*First*, the NYCBOE's claim that Plaintiffs do not have standing to assert their claims as "voters writ large"—a position for which they provide no authority whatsoever—is contrary to Supreme Court precedent. The Supreme Court has long recognized that "[t]he impact of candidate eligibility requirements *on voters* implicates basic constitutional rights." *Anderson v. Celebrezze*, 460 U.S. 780, 786 (1983) (emphasis added). It is disingenuous for the NYCBOE to argue that Plaintiffs do not have standing because they are mere voters without bothering to confront this clear Supreme Court precedent.

*Second*, and similarly, the NYCBOE continues to ignore the three-part balancing test created by the Supreme Court nearly four decades ago in *Anderson* and further refined in *Burdick*. *See Burdick v. Takushi*, 504 U.S. 428, 434 (1992); *Anderson*, 460 U.S. at 789. The *Anderson-Burdick* balancing test "serves as a single standard for evaluating challenges to voting restrictions," *Green Party of Tenn. v. Hargett*, 791 F.3d 684, 692 (6th Cir. 2015), and the NYCBOE cannot simply will it away. The test must be applied here because Plaintiffs challenge a law that burdens their "overlapping" rights "to associate for the advancement of political beliefs" and to "cast their votes effectively." *Williams v. Rhodes*, 393 U.S. 23, 30 (1968).

Under the required *Anderson-Burdick* analysis, the Court "must first determine the character and severity of the alleged burdens" on Plaintiffs' rights, including their associational rights." *Green Party of N.Y. State v. New York State Bd. of Elections*, 389 F.3d 411, 420 (2d Cir. 2004) (applying *Anderson-Burdick*). Here, the burden is severe—Plaintiffs are being completely deprived of their ability to associate with and cast their votes effectively for their qualified candidate of choice. The Court must then "consider the legitimacy and strength of the rationale put forward by [the NYCBOE], and determine whether it justifies the extent of the burden on Plaintiffs' . . . rights under the applicable framework." *Yang v. Kellner*, 20 Civ. 3325, 2020 WL 2129597, at *8 (May 5, 2020) (applying *Anderson-Burdick* to grant a preliminary injunction brought by *New York Democratic primary voters*).

The NYCBOE and Mr. Quart still stubbornly refuse to assert a *single state interest* in support of their position that Cameron Koffman must be excluded from the ballot. The Court must therefore "determine . . . that the state's interests are not sufficient to justify such burdens" and "must rule that the plaintiffs have a substantial likelihood of success on the merits of their claims." *Green Party of N.Y. State*, 389 F. 3d at 420; *see also Common Cause/New York v. Brehm*, 2020 WL 122589, at *23–24 (S.D.N.Y. Jan. 10, 2020) (applying *Anderson-Burdick* and holding a New York election practice unconstitutional where "no state interest [was] advanced" by the state's restrictions on the right to vote).

*Third*, the NYCBOE's reliance on *Lewis v. Guadagno*, 837 F. Supp. 2d 404 (D.N.J. 2011) is misplaced. The only plaintiff in *Lewis* was a candidate—not a voter—and his claim sounded solely in equal protection, not the First Amendment. *See id.* at 407–09. Accordingly, *Lewis* analyzed whether the candidate had been deprived of equal protection under the laws and narrowly "[held] that the durational residency requirement does not in any way discriminate against [*the candidate*] or deprive *him* of fundamental rights to which he is entitled." *Id.* at 416 (emphasis added). Indeed, the *Lewis* court exhaustively noted that none of the candidate's rights were at stake in that case, including the associational rights at the heart of the case at bar:

> By failing to satisfy the New Jersey residency requirement at issue, [the candidate] is not precluded from participating in the political process, from voting for or supporting particular candidates, from advocating for or contributing to certain causes, from associating with certain groups or lobbies, or from running for another political office, . . . . Likewise, he may exercise his rights to speak freely, to assemble peaceably, and to travel widely.

*Id.* Here, unlike in *Lewis*, Plaintiffs are being deprived of a fundamental right because they are being precluded "from voting for or supporting" Koffman. *Id.*; *see also Anderson*, 460 U.S. at 788 (voters' First and Fourteenth Amendment rights are "fundamental").

Plaintiffs take no position on whether New York's five-year residency requirement, as applied to Koffman, deprives Koffman of his equal protection rights.[1] And

[1] Plaintiffs note that the Supreme Court, New York County (Edmead, J.) did not address or analyze Koffman's rights

while Plaintiffs do plead an equal protection claim, it is based on the violation of *Plaintiffs'* equal protection rights, not Koffman's. *See* Dkt. 28 at 10–12 ("Applying the five-year residency requirement to Koffman subjects Plaintiffs to disparate treatment by erecting a barrier that makes it impossible for one group—Koffman's voters, including Plaintiffs—to exercise their fundamental rights.").

Therefore, for all the reasons set forth in Plaintiffs' preliminary injunction motion (Dkt. 27–31) and Plaintiffs' letters to the Court of May 6 (Dkt. 37) and May 7 (Dkt. 39), and May 8, 2020 (Dkt. 40), Plaintiffs respectfully request that the Court grant a TRO and, ultimately a preliminary injunction.

Respectfully submitted,

/s/

Richard D. Emery
Samuel Shapiro
Nick Bourland

c. Stephen Kitzinger, Assistant Corporation Counsel, *via email*
Steven H. Richman, General Counsel, NYCBOE, *vie email*
Martin Connor, attorney for Dan Quart, *via email*
N.Y.S. Office of the Attorney General, *via email* (service@ag.ny.gov).

under the United States Constitution in its May 8, 2020 decision, attached to the NYCBOE's May 9, 2020 letter (Dkt. 42) as Exhibit A.